IN THE UNITED STATES DISTRICT COURT
FOR 'THE DISTRICT OF GEORGIA
BRUNSWICK DIVISION

| | |
|---|---|
| FOUTZ CONSTRUCTION, LLC<br><br>Plaintiff,<br><br>v.<br><br>NEW CASTLE HOTELS AND RESORTS, JEKYLL ISLAND BEACHFRONT HOTEL, LLC, THE ANCHOR RESTAURANT,CHAMBERLAIN ARCHITECTS SERVICES LTD.<br><br>Defendants. | CIVIL ACTION NO. : 2:26-cv-000128<br><br>C O M P L A I N T<br>(JURY TRIAL DEMANDED) |

Plaintiff alleges as follows:

**PARTIES**

1. Foutz Construction, LLC is a Georgia limited liability company with its principal place of business in Saint Simons Island, Georgia.

2. Defendant, New Castle Hotels and Resorts is a corporation organized and existing under the laws of the State of Connecticut with its principal place of business located in Danbury, Connecticut.

3. Defendant Jekyll Island Beachfront Hotel LLC, is a corporation organized and existing under the laws of the State of Georgia with is principal place of business being in Jekyll Island Georgia.

4. Defendant Chamberlain Architects Services Ltd., is upon information and belief a foreign corporation organized and existing under the laws of Canada which does business in the State of Georgia.

**JURISDICTION AND VENUE**

5. This Court has subject matter jurisdiction over this case because this action arises under the federal copyright act. 17 U.S.C.; § 101 et seq.

6. Venue for this copyright action is proper pursuant to 28 U.S.C. 1400(a) and 28 U.S.C. § 1391 (b) as at least one or its agent may be found in this district, a substantial part of the events giving rise to the claims occurred in this district. and at least one defendant is subject to this Court's personal jurisdiction.

**FACTS**

7. Foutz Construction is a design build company offering clients the opportunity to design and construct projects under the same company.

8. Foutz was invited to submit drawings for a new restaurant to be built at the hotel owned by New Castle Resorts on Jekyll Island.

9. The existing hotel, the Jekyll Island Beachfront Hotel, was the site for the new restaurant called the Anchor Restaurant n/k/a "24 Coastal Grill".

10. Chamberlain Architects Ltd was engaged by New Castle to prepare drawings for the Anchor Restaurant after New Castle informed Foutz that New Castle decided not to go forward with the project at that time.

11. On June 3, 2022 Foutz Construction received a Concept Option for project basis from Ascension Program Management, a system which notifies design and construction companies various projects for which they can submit a bid.

12. Utilizing the information contained in the Ascension Program, Foutz created and submitted a proposal to New Castle Hotels "NCH".

13. On June 30, 2022 and July 1, 2022 Foutz Construction AND New Castle Hotels and Resort executed a contract whereby Foutz would develop plans for a restaurant and bar based upon the Holiday Inn Facility Option 2 plans layout provided from Ascension Program Management on 6/2/2022. The overall project was for a 1900 square foot restaurant with a bar, dining area, commercial kitchen and public restrooms. This portion of the project was for design services only. A copy of the contract for design services is attached hereto as Exhibit (1).

14. On or about July 1, 2022 Foutz received an "alternate idea sketch" from NCH which increased the usage space and scope of the project and included additional indoor seating, outside seating, and an enlarged kitchen.

15. Foutz submitted a concept floor plan to NCH based upon their direction for an increase in usable space as well as a larger kitchen and more seating inside and outside.

16. As is common with any design project, the Jekyll Island Authority hereinafter (JIA) required a full site plan for the entire property despite the replacement of the existing restaurant, therefore NCH submitted new ideas, changes, throughout July 2022 through correspondence with Foutz.

17. On or about July 19, 2022, Foutz received information that the Jekyll Island Authority would require the submittal of a site plan and documentation relating to the whole property. It was hoped that the proposed new building, which would replace an existing building, could simply be erected on the site of the demolished building without a full site plan and associated documents. The JIA informed Foutz that a full site plan would be required. In addition, Foutz was informed that it needed to provide a site section addressing lighting and sea turtle nesting and hatching. Plaintiff did.

18. On or about August 2, 2022 Foutz provided New Castle with .fbx and .dxf files to New Castle for review of 3D model progress. Rather than a 50% fee request by Foutz, he parties agreed that a 25% fee would be paid to continue the design work, but no consultants would be hired at that time.

19. On August 3, 2022, Foutz submits preliminary submittal documents to NCH dated 08/01/22 for JIA. A copy of the Preliminary Drawings are attached hereto as Exhibit (2).

20. On August 9, 2022, Keith Foutz met with NCH representatives regarding additional space and function of the building.

21. On or about August 11, 2022, Foutz learned that the JIA would require further documentation of the entire site, which would require an updated Survey and Civil site plan for future submittals. The JIA required additional documentation not envisioned in the original scope proposed by NCH and accepted by Foutz. JIA determined that documentation regarding the overall site, relating to fire hydrants, line locations on the existing road circulation for fire equipment, and parking calculations for the existing parking lot and our additional capacity. These all fall under Civil Engineering but no civil engineer had been engaged yet because NHC had not approved an engineer at that time despite the fact that the contract permitted a civil engineer be retained pre development.

22. Despite not being in the contract, Foutz did provide Fire Suppression plan to NCH and JIA on August 31, 2022.

23. Between August 2022 and October 2022 Foutz continued to provide amendments to the designs based upon changes required or suggested by either NCH or JIA. On October 11, 2022, Plaintiff received additional changes to include a name change from the Jekyll Holiday Inn Tiki Bar to The Anchor Restaurant. Foutz also sought and received quotes from civil, structural and mechanical engineers, required

to complete the construction documents. Quotes were also sought by Foutz from various vendors and subcontractors to establish the cost analysis for the construction phase of the contract.

24. By November of 2022, Foutz was meeting with NCH representatives to discuss project building pricing. The overall size of the covered area of the structure went from the original scope of 1900 square feet to 4160 square feet. The gross enclosed area went from 1900 in the original scope to 2840 square feet in the final version all at the request of NCH. Based upon the substantial increase in size of the project, Foutz submitted a Change Order requesting an additional increase in the design fee of $92,400.00 from $66,000.00. In failing to sign the valid Change Order submitted by the Plaintiff reflecting the increased cost due to the significantly larger design, NHC breached its contract with Foutz.

25. On or about November 30, 2022, Charles Clarke a NCH representative informed Keith Foutz that NCH had decided to "table the project until next season."

26. Upon receipt of the decision by NCH that they were not moving forward at that time with the project, the Plaintiff informed NCH that all the designs for the Anchor restaurant were the property of Foutz Construction and were not to be used unless a monetary agreement was reached for the use of the designs.

27. On or about March 1, 2023, Foutz informed NCH that they would release the designs and the portion of the completed construction documents if an agreement was reached between the parties. Jeremy Buffam responded to Plaintiff stating that NCH did not need or require a letter from Foutz to release the designs. In December 2023, Foutz again informed NCH in writing that the Foutz designs for the Anchor restaurant were not to be released for further development. NCH did not respond. Nor did NCH sign the change order submitted by Foutz and NCH refused to pay Foutz additional funds based upon the increase in size of the project.

28. In February 2024, Plaintiff learned that NCH was moving forward with the construction of the Anchor Restaurant on Jekyll Island. Foutz made a public records request to Glynn County for permit documents for the project.

29. Upon receipt of the permit documents from Glynn County, Foutz learned that NCH was using the Foutz design for the Anchor Restaurant. The Architect, Structural Engineer, Civil Engineer, Mechanical Engineer, and Equipment Consultant were all using the Foutz design for their original documentation.

30. Chamberlain Architects Services was retained by NCH to be the new architects on the Anchor Restaurant project. If any modifications were made to the Foutz design for the Anchor restaurant by Chamberlain they were extremely minor and aesthetic. Simply put, Chamberlain copied the Foutz design

Exactly including all the modifications that were made over the course of Foutz's work on the project. NCH knowingly provided the Foutz plans to Chamberlain without Foutz's permission and in direct contravention to Foutz's stated demand that the plans were not to be used by NCH.

31. NCH did not own the Foutz Designs and were explicitly warned not to use the designs by Foutz. Chamberlain simply copied the Foutz plans and moved forward with the construction all the while knowing they did not draw the designs but copied those published by Foutz.

32. The plans drafted by Foutz for the Anchor Restaurant were registered by the Plaintiff with the Copyright Office in accordance with Title 17 *United States Code* on January 16, 2026 and bear a Registration date of April 7, 2026. Attached hereto as Exhibit (3) are the Certificates of Registration for the Plaintiff's plans from the Copyright Office of the United States.

33. As such, Defendants' actions have infringed and are infringing plaintiff's copyright.

Specifically:

a. Defendants have created or directed the creation of construction plans that are copies or derivatives of plaintiff's copyrighted plan. Defendants' plans are unlicensed reproductions, and their creation violates the plaintiff's rights in its copyrighted work.

b. Defendants have created or directed the creation of representations of Plaintiff's copyrighted word for use in their advertising, promotional, and marketing materials. Such representations are unlicensed copies or derivatives of Plaintiff's copyrighted work and violate the Plaintiffs' rights in its copyrighted work.

c. Upon information and belief; Defendants have distributed copies of such representations of the plaintiff's copyrighted work in their advertising activities. Such distribution violates plaintiff's rights in its copyrighted work, including the right to distribute copies, to display its plans publicly, and to display derivatives of its work publicly.

d. Upon information and belief, the defendants have constructed the Anchor Restaurant. The construction of the Anchor Restaurant violates the plaintiff's right to reproduce the copyrighted plan and to prepare derivatives of the copyrighted plan.

e. The defendants undertook all these activities despite knowledge of plaintiff's copyright. Thus, these defendants' actions have been committed willfully with actual knowledge or with reckless disregard of the fact and their actions constitute copyright infringement.

f. The Defendant, NCH has benefited and been enriched through the construction of the Anchor Restaurant. And continue to acquire ill gotten profits from the operation of the restaurant and sale of food and beverages at the restaurant. Additionally, NCH has enhanced their ability to rent rooms at the Hotel on site because of the increased benefit of a new full service restaurant on site.

g. Chamberlain Architects Services also enjoyed ill gotten benefits through their participation in using the Foutz design without compensating Foutz in anyway, but incorporating the Foutz designs directly into their own and profiting off the designs without permission.

**FIRST CAUSE OF AC'I'ION - ALL DEFENDANTS**
**(Copyright Infringement - 17 U.S.C.§§ 101 et seq.)**

34. Plaintiff fully incorporates the above paragraphs.

35. Plaintiff Foutz Construction is the author of the copyrighted architectural plan registered with the U.S. Copyright Office, Certificate of Registration VA. Attached hereto is Exhibit 2, the copyright documents.

36. Defendants have infringed and continue to infringe the copyright by advertising, copying, publishing, distributing, selling, and/or constructing the "Plan". Defendant Chamberlain profited from undertaking the design role using Foutz's designs and profiting off of the Anchor Restaurants construction despite Chamberlain's illegal use of Foutz's plans. Defendant NCH profits every day the restaurant operates and constructed the Anchor Restaurant with Foutz's protected design. Defendant NCH continues to operate the restaurant and hotel and profit from its operation despite their copyright infringement from plaintiff's protected work.

37. The copyrighted original architectural work contains material wholly original and that is copyrightable subject matter under 17 U.S.C. §§ 101 et seq. Copyrighted documents include:

Attached hereto is Exhibit 3, Plaintiff's copyrighted plans dated November 11, 2022;

Sheet T100, A001, A100, A101, A201, A302, A303, A304, T100 – Cover Sheet w 3d rendering,

A001- Survey, A100 – Site Plan incl. enlarged view diagram,

A101 – Floor Plan

A201- Elevations with all 4 (N, S, E, W) elevation drawings

A302 – 3D Perspective views (6 independent rendered views)

303 – Fire Suppression Plan (additional requirement from JIA)

A304 – 3D Section Cut

38. Defendants had access to Foutz's design for the Anchor Restaurant as plaintiff directly provided defendants a copy of said plan for the purpose of securing potential business deal.

39. The Defendants'` use and copying of the Foutz design in advertising, creating, marketing, and publishing this plan as their own as well as constructing the Anchor Restaurant according to the Foutz plan or derivatives thereof,, was without consent and permission.

40. As a direct and proximate result of Defendants' wrongful conduct, plaintiff has been damaged.

41. The Defendants' infringement of the "The Anchor Restaurant" copyright has been and continues to be committed willfully.

**FOR A SECOND CAUSE OF ACTION**

**(Breach of Contract NCH)**

42. Plaintiff incorporates the above paragraphs.

43. Plaintiff Foutz Construction and Defendant NCH entered into a contract whereby Foutz would design a restaurant to be built at the Jekyll Island Holiday Inn on Jekyll Island Georgia.

44. Plaintiff designed and submitted drawings for the Anchor Restaurant and over a period of six months, made numerous additions, deletions and changes to the original submittal based upon a specific scope. At the request of the Defendant, NCH, the size and scope of the project was dramatically increased.

45. What was originally specified to be a 1900 square foot building was expanded to a 4160 square foot building. All changes expanding the size of the building were at the request of the Defendant, NCH.

46. Pursuant to the terms of the contract, the Plaintiff Foutz Construction was permitted to submit change orders reflecting costs of changes made to the original scope of work.

47. Once Foutz completed the plans for the expanded version of the restaurant, Foutz submitted a change order to reflect the increased design cost because the building doubled in size. The cost to design a building is related to the size of the building being designed.

48. Plaintiff Foutz submitted a change order to accurately reflect the increased cost of designing a 1900 square foot building as opposed to a 4160 square foot building. The change order increase the design costs from $66,000.00 to $92,400.00. Defendant NCH refused to acknowledge the change order and certainly did not pay the change order. Plaintiff recalculated the amount owed under the change

order based upon the square footage as well as the additional work requested by the JIA and determined that the change order should have been $145,000.00. Attached hereto Exhibit 4 Corrected Change Order.

49. Defendant NCH failed to respond to the request for the change order increasing the design costs. Instead, NCH stated that they were not going forward with the project and refused to pay the increased charges or sign the change order.

50. Defendant NCH's refusal to sign the change order reflecting increased design costs was a breach of contract. Having breached the contract for non payment, the Defendant NCH is estopped from enforcing other provisions set forth in the contract.

51. Plaintiffs are entitled to recover amounts owed due to the increased cost of designing a significantly larger restaurant than the original scope requested.

**RELIEF SOUGHT**

52. Plaintiff fully incorporates the above paragraphs.

53. Plaintiff hereby demands trial by jury as to all issues other than the equitable remedies sought herein.

WHEREFORE, Plaintiff hereby demands judgment against defendant as follows:

a. Direct the defendants to pay plaintiff such damages as the jury determines plaintiff has sustained due to the defendants' infringing plaintiff's copyright, and to account for and to pay plaintiff all gains, profits, and advantages derived by defendants by their infringement of the copyrights under 17 U.S.C. § 504(b), or at plaintiff's election, statutory damages under 17 U.S.C. § 504(c), which permits recovery of up to $150,000.00 for each infringement of each copyrighted work;

b. Direct the defendants to pay plaintiffs costs of this action and its reasonable attorney's fees allowable to plaintiff by the Court under 17 U.S.C. § 505;

c. Temporarily and permanently enjoin and restrain the defendants and their officers, directors, principals. agents, servants, employees. successors. and assigns, and all those in active concern participation with them, from:

1. Making copies and/or copies of derivatives and any unauthorized use of the copyrighted work in any manner,
2. Advertising, publishing, distributing, selling, marketing, constructing or otherwise disbursing of any copies of the copyrighted work;
3. Manufacturing, producing, building, constructing, circulating, selling, publishing, offering for sale, advertising, or displaying any product bearing any simulation,

reproduction, copy or colorable imitation of the registered copyright, including non-pictorial representations;

4. Using any simulation, reproduction, copy, or colorable imitation of' the copyrighted work in connection with the promotion, advertisement, display, sale, offering for sale, manufacture, production, building, construction, circulation or distribution of any product or service. This includes by electronic means on websites, blogs, Facebook profiles, and the like;

d. Direct the defendants to deliver to the Court for impounding during the pendency of the action under 17 U.S.C. § 503 all copies of the copyrighted works in the defendants' possession or under the defendants' control and to deliver up for destruction all infringing copies and all devices used for such infringing copies;

e. Direct the defendants to provide to plaintiff the names and addresses of all persons who have purchased, licensed, or obtained from the defendants all designs that infringe on the copyrighted work or who have had projects constructed from plans of the defendants that infringe the "Anchor Restaurant" copyright;

f. Plaintiff Foutz is entitled to recover the charges submitted for the increased cost of the design as a result of the increase in size of the structure at the request of Defendant NCH as well as interest from the date NCH refused to pay.

g. Award to plaintiff such other and further relief as the Court may consider appropriate.

[SIGNATURE ON FOLLOWING PAGE]

Respectfully submitted,

By: s/Thomas J. Finn

Thomas J. Finn (FBN 66534)
PO Box 6003
Hilton Head Island, South Carolina 29938
38D New Orleans Road
Hilton Head Island, South Carolina 29928
*Attorney for the Plaintiff*

Hilton Head Island, South Carolina
November 11, 2026